United States District Court
Southern District of Texas
**ENTERED**
December 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT　　　　SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Kyle James, § | |
|    *Plaintiff*, § | |
| § | |
| v. § | Civil Action H-22-1195 |
| § | |
| AssetCare, LLC,[1] § | |
|    *Defendant*. § | |

# Report and Recommendation

Defendant AssetCare, LLC, (AssetCare) moves to dismiss Plaintiff Kyle James's Fair Debt Collection Practices Act (FDCPA) claims under Federal Rule of Civil Procedure 12(b)(1) and, alternatively, 12(c). ECF No. 11. The court recommends that the motion be GRANTED.

## 1. Background

James is a resident of California. Compl. ¶ 3, ECF No. 1. AssetCare is a Texas corporation that operates a consumer debt collection agency. *Id.* ¶ 4.

In March 2022, Peter Jackson, who is not a party to this lawsuit, reviewed his credit report and discovered a collection action reported by AssetCare. Compl. ¶¶ 8–9. Jackson allegedly owed $1,004 to Cypress Emergency Associates with an open date of June 29, 2021. *Id.* ¶ 12. Jackson called AssetCare and was told by a representative that their records showed that the actual date of the debt was July 18, 2015. *Id.* ¶ 11. The incorrect open date caused a decrease in Jackson's credit score and made the account appear to be more recently delinquent that it was. *Id.* at ¶ 13. Jackson "assigned 100 precent of his claim(s)" to James. *Id.* at ¶ 3.

---

[1] AssetCare, LLC, was incorrectly named Asset Care, LLC, in Plaintiff's complaint. ECF No. 11 at 1.

The complaint alleges that the "re-aging and manipulating of the dates artificially lowered Plaintiff['s]" credit scores and that the "publishing of such inaccurate and incomplete information . . . severely damaged the personal and credit reputation of Plaintiff and caused severe humiliation, emotional distress, mental anguish and lower [credit] scores." Compl. ¶¶ 13–14. James, the plaintiff in this case, is not the debtor whose credit scores allegedly were lowered. *See* Compl. ¶ 7–14. There is no information to suggest that James's credit score was lowered. *Id.*

AssetCare moves to dismiss the case under Federal Rule of Civil Procedure (Rule) 12(b)(1) for lack of subject matter jurisdiction and for judgment on the pleadings under Rule 12(c). ECF No. 11 at 5. AssetCare argues that James does not have standing because he has no legally protected interest under the FDCPA and Texas law does not recognize assignment of personal, statutory claims. *Id.* at 6–10. Alternatively, AssetCare argues that the court must dismiss the claims because James is not authorized to practice law and cannot represent Jackson's legal interests. *Id.* at 10–11. James responded, ECF No. 12, and AssetCare replied, ECF No. 13. The motion is fully briefed.

2. *Subject Matter Jurisdiction Standard*

"Federal courts are courts of limited jurisdiction[,]" and the presumption is that "a suit lies outside this limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). A court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Settlement Funding, L.L.C.*, 851 F.3d at 534 (quoting *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012)) ("A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal.").

"A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The party asserting jurisdiction has the burden to prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Id.* The court liberally construes pro se pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Subject matter jurisdiction "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 2). Constitutional "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy" and is an "essential component[] of federal subject matter jurisdiction." *Id.* at 338; *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004). The party invoking subject matter jurisdiction has the burden to prove standing. *Spokeo, Inc.*, 578 U.S. at 338. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The elements of constitutional standing are that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338.

3. *Analysis*

AssetCare argues that the court lacks subject matter jurisdiction because James does not have standing to bring the FDCPA claim alleged in this case. ECF No. 11 at 5–10. If AssetCare had reported inaccurate and incomplete information about James that damaged his own credit score, he likely would have Article III standing. James has not, however, alleged any facts indicating that his own credit score was harmed. Rather, James alleges that he has standing through the assignment of Peter Jackson's FDCPA claims against AssetCare.

3

Compl. ¶ 3. AssetCare argues that Texas law does not recognize the assignment of FDCPA claims. ECF No. 11 at 6–10. Thus, the court must decide whether Jackson's assignment of his FDCPA claims conveys James standing to assert the FDCPA claims. If FDCPA claims cannot be assigned in this way, then James lacks standing.

The assignment of federal law claims is governed by the law of the forum state. *See Woodfield v. Bowman*, 193 F.3d 354, 359 (5th Cir. 1999) (stating that, in federal diversity cases, the law of the forum state applies to assignments). Texas law applies. Under Texas law, "a party may obtain standing derivatively [through assignment] from the standing of another party." *Mid-Town Surgical Ctr., LLP v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 774 (S.D. Tex. 2014).

Although the court has not found a definitive answer on the assignability of FDCPA claims in Texas, the Supreme Court of Texas has provided a roadmap for the analysis. *See PPG Indus. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79 (Tex. 2004). In *PPG Industries*, the court considered whether claims brought under Texas's Deceptive Trade Practices–Consumer Protection Act (DTPA) were assignable. *See id.* The Texas Supreme Court considered several factors, including the statute's purpose, the effect of assignability on litigation, and the personal aspect of the statute. Having considered these factors, the court concluded that assigning DTPA claims would defeat the statute's primary purpose of encouraging individual consumers to bring DTPA claims themselves and that the personal and punitive aspects of DTPA claims were inconsistent with "allowing them to be assigned as if they were mere property." The court finds that the same is true for FDCPA claims and that the Supreme Court of Texas is likely to apply similar reasoning to the same end.

As is the case with the DTPA, the FDCPA does not explicitly authorize the assignment of claims. *See, e.g.*, 15 U.S.C. § 1692k (discussing civil liability). Turning to the factors discussed in *PPG Industries*, the court notes that the FDCPA is a consumer protection statute. *See* 15 U.S.C. § 1692(e) (explaining the purpose is "to protect consumers against debt collection abuses"); *see also Salermo v. Hughes Watters & Askanase LLP*, 516 F. Supp. 3d 696, 703 (S.D. Tex.

4

2021) (same). The FDCPA aims to protect consumers by "eliminat[ing] abusive debt collection practices by debt collectors, . . . insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and . . . promot[ing] consistent State action[.]" 15 U.S.C. § 1692(e). To aid in consumer protection, the FDCPA not only authorizes enforcement by the Federal Trade Commission but also encourages consumers to file their own complaints. *See* 15 U.S.C 1692k. If successful, a consumer may recover actual damages, additional damages, costs of the action, and reasonable attorney's fees. 15 U.S.C. 1692(a).

If FDCPA claims were assignable, these incentives would not benefit the consumer harmed. Instead, assignability would encourage a stranger to the illegal debt collection practice to bring suit for profit alone. In *PPG Industries*, the court noted, "Consumers are likely to be at a severe negotiating disadvantage with the kinds of entrepreneurs willing to buy DTPA claims cheap and settle them dear." 146 S.W.3d at 86. The same is true for consumers who have been harmed by deceptive debt collection practices, and assignability of FDCPA claims may ultimately hurt those the statute was intended to protect.

Along those lines, assignability of FDCPA claims may work against the stated goal of eliminating abusive debt collection practices by distorting the adversary process. The FDCPA directs a court to determine the amount of liability by considering factors such as the frequency and persistence of the debt collector's noncompliance, the nature of the noncompliance, and the extent to which it was intentional. 15 U.S.C. §1692k(b). Without the presence of the harmed party, it may be difficult for the court to accurately ascertain all the facts necessary to fashion an appropriate remedy. *Cf. PPG Indus.*, 146 S.W.3d at 90 (discussing how the litigants' motivations may undermine the Legislature's goal when the affected consumer is not a party). Moreover, the FDCPA touches consumers and debt collectors, which infuses the act with a personal aspect that is not amenable to assignability. *Cf. id.* at 91 (stating that the DTPA is primarily concerned with people, which "gives the entire act a personal aspect").

Following the approach and reasoning of the Supreme Court of Texas in finding that DTPA claims are not assignable, the court

concludes that Jackson's FDCPA claims were not assignable, and the assignment to James is not valid under Texas law.[2]

Because Texas law determines whether the assignment is valid, James's citation of a case governed by Oklahoma law is not informative. ECF No. 12 at 10. James's citation to *Sprint Commc'ns. Co., LP v. APCC Servs., Inc.*, 554 U.S. 269 (2008), also is not informative. ECF No. 12 at 4–6, 10. In that case, which concerned a very different statutory scheme, there was no question that the assignments were valid. *Id.* at 272. The question before the Supreme Court in that case was whether the valid assignment of claims conferred standing. *Id.* at 271. In this case, the question is whether there has been a valid assignment of claims at all.

James does not have standing to assert Jackson's FDCPA claims and alleges no other claim against AssetCare. Thus, there is no case or controversy before the court, thereby depriving the court of subject matter jurisdiction. The court need not reach the issue of whether James is engaged in the unauthorized practice of law.

## 4. Conclusion

The court recommends that Defendant AssetCare's motion to dismiss, ECF No. 11, be GRANTED and that the FDCPA claims be dismissed without prejudice. Leave to amend the complaint is DENIED as futile because the claims asserted are not assignable, and the addition of factual assertions would not make them so.

---

[2] That the Supreme Court of Texas would likely conclude that FDCPA claims are not assignable is further supported by the statutory relatedness of the Texas Debt Collection Act to the DTPA. *See* Tex. Fin. Code § 392.404 (stating that a violation of that statute is a violation of the DTPA and is actionable under the DTPA).

The parties have fourteen days from service of this report and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on December 21, 2022.

_____
Peter Bray
United States Magistrate Judge